```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

KADLEC MEDICAL CENTER *et al.*                                CIVIL ACTION

VERSUS                                                        No. 04-0997

LAKEVIEW ANESTHESIA ASSOCIATES *et al.*                       SECTION I/3

### ORDER AND REASONS

Before the Court is a motion *in limine* filed on behalf of defendant, Lakeview Medical Center L.L.C., d/b/a Lakeview Regional Medical Center ("LRMC"), to exclude or limit certain testimony in advance of trial.[1] Defendants, Lakeview Anesthesia Associates, Drs. Dennis, Preau, Baldone and Parr, have adopted several of LRMC's arguments.[2] For the following reasons, defendant's motion *in limine*, including those portions of the motion adopted by the remaining defendants, is **GRANTED IN PART, DENIED IN PART, DISMISSED AS MOOT IN PART, DEFERRED TO TRIAL IN PART, AND DISMISSED WITHOUT PREJUDICE IN PART.** To the extent that any arguments have previously been decided by this Court or are more specifically briefed within a separate motion *in limine*, the motion herein is **DISMISSED.**

---

[1] Rec. Doc. No. 207.

[2] Rec. Doc. No. 204. Specifically, the LAA defendants have adopted items 2, 3, 7, 8, 11, 12, 13, 14, 15, 18, 20, 21, 22, and 24-41.

The background of this tort action has previously been detailed.[3] The Court addresses the issues enumerated in LRMC's motion in the order presented:

**1. Any reference to Dr. Dennis or other co-defendants as agents of LRMC**

LRMC objects to any reference to Dr. Dennis or other co-defendants as agents of LRMC.  Specifically, LRMC contends that this "eleventh-hour theory is grossly surprising, prejudicial, and unsupported" because this theory of liability was not raised in the complaint.[4]  LRMC first urged this objection before the first pre-trial conference on or about May 6, 2005, and, therefore, it is no longer a surprise.  LRMC does not address the factual or legal basis of plaintiffs' agency argument.

Plaintiffs' complaint named Dr. Dennis in his individual capacity and (1) as the director of LRMC, (2) as a member of the LRMC medical executive committee, and (3) as chief of anesthesiology for LRMC.[5]  The complaint further alleges that LRMC had knowledge of Dr. Berry's termination by LAA through Dr. Dennis.[6]  Whether the evidence will be sufficient to support an agency relationship is unclear at this point.  However, LRMC is not entitled to have the Court exclude any reference to Dr.

---

[3] *See, e.g.*, Rec. Doc. No. 157.

[4] Rec. Doc. No. 207.

[5] Rec. Doc. No. 1, ¶5.

[6] Rec. Doc. No. 1., ¶20.

Dennis as an agent of LRMC.  Accordingly, **IT IS ORDERED** that this portion of the motion is **DENIED.**

### 2.    a. Kadlec Medical Center having or suffering damages

LRMC seeks to have excluded any reference to Kadlec Medical Center having damages.  LRMC contends that Kadlec suffered no pecuniary harm because Western Professional Insurance Company ("WPI") and/or its reinsurers paid the settlement with the Jones family.  This issue, to the extent not encompassed by LRMC's argument regarding Kadlec's attorneys fees, is addressed in a separate order and reasons of this Court.  Therefore, this portion of LRMC's motion is **DISMISSED AS MOOT.**

### b. Attorneys fees and/or other costs incurred by either side in the underlying Jones litigation

In addition to the economic harm represented by the settlement with the Jones family, plaintiffs seek attorneys fees and other costs incurred in the underlying Jones lawsuit.[7]  Relying on *Coates v. Anso Insulations, Inc.*, 786 So. 2d 749, 755-56 (La. App. 4th Cir. 2001), LRMC argues that plaintiffs are not entitled to recover attorneys fees incurred in the underlying litigation as damages in this action.[8]  In *Coates v. Anso*

---

[7] *See* Rec. Doc. No. 1.

[8] Defendants also assert that plaintiffs have failed to provide sufficient documentation of any attorneys fees or costs incurred.  At the final pre-trial conference, plaintiffs indicated that they have produced all documentation related to attorneys fees.  The parties also indicated that they would be stipulating to the amount and reasonableness of such fees.

*Insulations*, the court recognized the well-settled "American rule" that absent contractual or statutory liability therefor, attorneys fees and expenses incurred by a plaintiff are not recoverable as damages. *Id.*

It is undisputed that plaintiffs may not recover their attorneys fees incurred in *this action* and that any reference to such fees is inappropriate. However, plaintiffs direct the Court to section 914 of the Restatement (Second) of Torts, which provides:

> (1) The damages in a tort action do not normally include compensation for attorney fees or other expenses of the litigation. (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914. In addition to the Restatement of Torts, plaintiffs cite two Louisiana cases in support of their position that an exception to the general rule exists. *See Field v. Jones*, 8 So. 2d 711 (La. App. 1st Cir. 1942); *Batson v. S. La. Med. Ctr.*, 724 So. 2d 782 (La. App. 1st Cir. 1998).

In *Field v. Jones*, a Louisiana appellate court found that plaintiffs were entitled to recover "attorney's fees" as "an award of damages to compensate the plaintiffs for the unexpected litigation which [] resulted from defendants' [actions]." 8 So. 2d at 790. However, whatever support for the recovery of

attorneys fees plaintiffs found in the Louisiana First Circuit Court of Appeal's decision in *Batson v. South Louisiana Medical Center* is eroded by the Louisiana Supreme Court's subsequent amendment of the judgment wherein the court, without comment, deleted the attorneys fees award. *See* 734 So. 2d 649 (La. 1999).

This Court concludes that the general rule of *Coates v. Anso Insulations* does not govern in this particular case. Moreover, persuasive authority from a number of other jurisdictions supports the conclusion that attorneys fees incurred due to the tortious acts of a defendant may be recoverable as economic damages. *See, e.g.*, *Textron Financial Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 13 Cal. Rptr. 3d 586 (Cal. Ct. App. 2004)(recognizing exception); *Welker v. S. Baptist Hosp. of Fla., Inc.*, 864 So. 2d 1178 (Fla. Dist. Ct. App. 2004)(same); *State ex rel. Okla. Accountancy Bd.*, 81 P.3d 75 (Okla. Civ. App. 2003)(same); *Central Trust Co. v. Goldman*, 417 N.Y.S.2d 359, 361 (N.Y. App. Div. 1979)(same). Finally, the Court is persuaded that the Louisiana Supreme Court, if faced with this issue, would look to the Restatement (Second) of Torts for guidance.[9] Because the attorneys fees at issue are those incurred by plaintiff, Kadlec, in the Jones litigation due to the alleged tortious acts of defendants, the situation is precisely the scenario

---

[9] *See* Rec. Doc. No. 157. p. 13 (recognizing that Louisiana courts look to the Restatement for guidance).

contemplated by the Restatement (Second) of Torts.  Accordingly, **IT IS ORDERED** that this portion of the motion *in limine* is **DENIED.**  Whether defendants caused Kadlec to incur such attorneys fees as a result of their alleged tortious actions is a question for the jury.

### c. Types of damages other than those pleaded.

LRMC seeks to have the Court prohibit any reference to damages other than those pleaded, including but not limited to damage to Kadlec's reputation.  Plaintiffs have not pleaded damages other than those represented by the settlement payment and/or attorney fees and costs incurred in the Jones lawsuit.  Moreover, plaintiffs do not contend that there are any other damages at issue.  Accordingly, **IT IS ORDERED** that this portion of the motion is **DENIED AS MOOT.**

### 3. Health Care Worker Impairment

LRMC asks the Court to preclude plaintiffs from making any reference to health care worker impairment in general, including how LRMC handled situations with certain nurses or other physicians.  LRMC further requests the Court prohibit references to general articles, newsletters, educational videos, pamphlets, or media coverage on the subject.

This portion of the motion is **DEFERRED UNTIL TRIAL.**  With respect to the publications identified by LRMC, for the reasons stated in the Court's Order and Reasons with respect to LAA's

motion *in limine* (Rec. Doc. No. 204), some of this evidence may be relevant and admissible.

**4. LRMC's or HCA's bylaws, internal policies, manuals, and codes of conduct**

LRMC contends that its bylaws, policies, and procedures, as well as those of its parent corporation HCA, should be excluded as irrelevant and prejudicial. Plaintiffs maintain that such materials are relevant as evidence of a standard of care under Louisiana law.

The Court agrees with defendants that, as a matter of law, a hospital does not subject itself to tort duties that would not otherwise exist by merely adopting or instituting internal policies and guidelines. Nevertheless, such materials may be *evidence* of a standard of care. Accordingly, **IT IS ORDERED** that this portion of the motion is **DENIED.**

**5. Nursing policies**

LRMC seeks to exclude any reference to policies or procedures that apply only to nurses. Plaintiffs concede that such matters would not be relevant. Accordingly, this portion of the motion is **DENIED AS MOOT.** To the extent any questions exist as to the scope and applicability of a particular policy to physicians as opposed to nurses, the parties must first raise the issue outside the presence of the jury.

**6. HCA's business, HCA's other hospitals and personnel, and HCA's corporate integrity agreement**

-7-

For the same reasons stated with respect to Issue No. 4 (LRMC's and HCA's bylaws, internal policies, manuals, and codes of conduct), **IT IS ORDERED** that this portion of LRMC's motion *in limine* is **DENIED**.  Furthermore, the Court specifically finds that the probative value of any reference by plaintiffs to HCA and/or HCA hospitals would not be substantially outweighed by the danger of unfair prejudice or confusion of the issues.

**7. Putative moral and ethical duties; 8. Legal opinions and conclusions; 9. Alleged billing errors and audits**

The issues raised by this portion of LRMC's motion, identified as Nos. 7-9, are set forth more fully in its motion to strike plaintiffs' experts.  The Court will address these arguments in a separate order and reasons.

**10. LRMC's letters as recommendations**

LRMC urges the Court to prohibit any reference to the letters of LRMC as "recommendations."[10]  LRMC argues that to do so would be highly misleading and inaccurate because their letter contained only three elements: (1) a prefatory phrase explaining the limited purpose of the information provided; (2) the dates of Dr. Berry's privileges; and (3) an invitation to call for more information.

The jury will make the ultimate decision as to the content

---

[10] To the extent LRMC's motion addresses Dr. Lecky's use of the word recommendation in describing LRMC's letters, the Court will address the issue when it rules on LRMC's motion to strike (Rec. Doc. No. 203).

of LRMC's letters.  Whether the credentialing letters are properly referred to by plaintiffs as "recommendations," reference letters, credentialing letters, or responses to Kadlec's inquiries can be addressed by LRMC through argument and cross-examination.  Additionally, the Court finds that such evidence should not be excluded based on the argument that its probative value is substantially outweighed by the danger of unfair prejudice and confusion.  Accordingly, **IT IS ORDERED** that LRMC's motion to prohibit any reference to its letters as "recommendations" is **DENIED.**

**11. Application of Louisiana's Diversion of Medication statute to LRMC; and 12. HCQIA, other reporting statutes, and the National Practitioner's Data Bank**

The Court defers ruling on these issue until the parties submit additional pre-trial briefing as directed by the Court in its minute entry issued following the final pre-trial conference.

**13. Harm to and conditions of Jones and family**

LRMC contends that in light of the stipulation that Kadlec's settlement with the Jones family was reasonable, the extent and nature of Ms. Jones's injuries and the nature or extent of the harm to her family is irrelevant and unfairly prejudicial.  While the parties have stipulated to the reasonableness of the Jones settlement, plaintiffs may need to introduce some evidence of Ms. Jones's injuries.  For example, plaintiffs may need to show the amount of time that Jones's brain was deprived of oxygen in order

to assist the jury in determining whether Dr. Berry was impaired at the time he allegedly breached the standard of care owed Ms. Jones.  On the other hand, the nature or extent of harm caused to the Jones *family* is irrelevant as is some of the evidence related to Jones's medical.

Accordingly, **IT IS ORDERED** that LRMC's motion is **GRANTED** as it pertains to testimony from the family of Ms. Jones.  With respect to other evidence relating to the medical condition of Ms. Jones, however, the Court is unable at this time, without having heard the testimony, to definitively rule on this portion of the motion.  The Court **DEFERS** ruling on this portion of LRMC's motion until trial.

**14. Comparisons and references to Terry Schiavo**

Plaintiffs concede that they will introduce no evidence dealing with Terri Schiavo.  Accordingly, **IT IS ORDERED** that this portion of LRMC's motion is **DENIED AS MOOT**.

Plaintiffs represent that they may wish to refer to Terry Schiavo during argument as a point of reference for they jury.  The Court **GRANTS** the motion to the extent it seeks to preclude any reference to Terry Schiavo as such argument can only be introduced to inflame and prejudice the jury.

**15. Effect of the Jones incident on Kadlec's employees**

LRMC argues that any testimony regarding the emotional impact on Kadlec's employees caused by the Jones incident should

-10-

be excluded because it is irrelevant and highly prejudicial. Plaintiffs suggest that they are entitled to introduce such evidence to give context to certain testimony and to explain the demeanor of certain witnesses. Any testimony to this effect would not be relevant. Accordingly, **IT IS ORDERED** that this portion of the motion is **GRANTED.**

**16. Mediation of the underlying Jones litigation**

LRMC moves to have any evidence involving the mediation in the underlying Jones litigation, other than the stipulated settlement amount, excluded. Plaintiffs concede that they will not introduce any evidence regarding mediation of the Jones litigation. Therefore, this portion of the motion is **DENIED AS MOOT.**

**17. Max Lauderdale's position of Ethics Compliance Officer**

LRMC argues that plaintiffs should not be permitted to make any reference to Max Lauderdale as the "Ethics Compliance Officer." Plaintiffs maintain that Lauderdale, who was the CEO of LRMC and its ethics compliance officer, hid Dr. Berry's impairment. The Court **DENIES** this portion of the motion because Lauderdale's position relates to a standard of care that LRMC, itself, applied. Moreover, his position is relevant to his duties at LRMC and, therefore, it relates to a standard of care.

**18. Insurance policies or insurance status of the defendants**

LRMC seeks to have excluded any reference to any defendants'

-11-

insurance policies or insurance status.  Plaintiffs indicate that provided defendants make no reference to any lack of insurance, plaintiffs will not refer to defendants' insurance policies. Accordingly, **IT IS ORDERED** that this portion of the motion is **DENIED AS MOOT.**

### 19. Strict liability misrepresentation

The Court granted defendants summary judgment as to plaintiffs' strict liability misrepresentation claim.  Plaintiffs concede that they will not reference such a claim.  Accordingly, **IT IS ORDERED** that this portion of the motion is **DENIED AS MOOT.**

### 20. Alleged conspiracy between the defendants

LRMC argues that plaintiffs did not adequately plead a conspiracy between the defendants and that the first pre-trial order, submitted to the Court on May 10, 2005, omitted any reference to a conspiracy.  LRMC argues that plaintiffs' complaint was superseded by the pretrial order.

The Court notes that the pretrial order submitted by the parties was not approved by the Court,[11] and, therefore, plaintiffs' complaint was not superseded.  Plaintiffs' complaint contains a factual allegation that the defendants conspired to keep Dr. Berry's impairment and unfitness a secret.[12] Accordingly, **IT IS ORDERED** that LRMC's motion *in limine* to

---

[11] *See* Rec. Doc. No. 142.

[12] Rec. Doc. No. 1, ¶ 21.

exclude any reference to a conspiracy is **DENIED.**

**21. Use of improper summary documents**

LRMC argues that two of plaintiffs' exhibits are improper summary charts.[13] Plaintiffs contend that exhibits 77 and 102 are admissible as demonstrative evidence.

Having not seen the exhibits, the Court is unable to make a ruling at this time. Accordingly, the Court's ruling on plaintiffs' summary documents is **DEFERRED UNTIL TRIAL.**

**22. Dr. Berry's invocation of the Fifth Amendment**

LRMC contends that the Court should exclude evidence of Dr. Berry's invocation of the Fifth Amendment or, at the very least, the Court should limit plaintiffs' references to his invocation of the Fifth Amendment. Additionally, LRMC seeks a jury instruction that no adverse inference can be drawn as to LRMC from Dr. Berry's invocation of the Fifth Amendment.

Plaintiff emphasizes the fact that LRMC intends to introduce the deposition of Dr. Berry wherein he asserts his rights pursuant to the Fifth Amendment. Nevertheless, LRMC maintains that the prejudicial effect of Dr. Berry's invocation of his Fifth Amendment right substantially outweighs its probative value.

Evidence that a non-party took the Fifth Amendment is not

---

[13] Plaintiffs have agreed that exhibits 87-90 will not be used at trial, which moots LRMC's motion as to those summary documents.

barred by the Constitution.  *FDIC v. Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 977 (5th Cir. 1995).  Moreover, such evidence is admissible if it is relevant and not otherwise prohibited by the rules of evidence.  *Id.*  LRMC does not contest the relevancy of Dr. Berry's testimony or his invocation of the Fifth Amendment, arguing only that his invocation of the Fifth Amendment is excludable because its probative value is outweighed by its prejudicial effect.

This portion of LRMC's motion is **DENIED.**  The jury is entitled to weigh Dr. Berry's credibility by considering both the questions he answered and those questions for which he invoked the Fifth Amendment.  The Court will instruct the jury that an adverse inference may be drawn as to Dr. Berry.  *See Pyles v. Johnson*, 136 F.3d 986, 997 (5th Cir. 1998); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 (5th Cir. 1990)("an adverse inference may be drawn from a witness' assertion of her fifth amendment rights in civil cases")(citing *Baxter v. Palmigiano*, 425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)).  Finally, the Court finds that any prejudicial effect does not substantially outweigh the probative value of the evidence.

**23. LRMC's Motion to Strike certain expert testimony**

LRMC reurges its motion to strike three of plaintiffs' experts (Rec. Doc. No. 203).  As with the duplicative issues identified above which are included in LRMC's motion to strike,

the Court will address LRMC's motion in a separate order and reasons.

**24. Certain gestures of Mr. Fellini**

LRMC contends that the Court should exclude any reference to certain gestures made by Mr. Fellini toward his employers. Defendants' objection appears to refer to a witness appearing by video. Mr. Fellini apparently mooned his peers and supervisors at a hospital meeting. Plaintiffs indicate that they have not designated this portion of the video deposition.

Accordingly, **IT IS ORDERED** that LRMC's motion to exclude Mr. Fellini's gestures is **DENIED AS MOOT.** If there are any other "gestures" to which LRMC is referring, other than the gesture identified as mooning, the Court's ruling on that portion of the motion is **DEFERRED UNTIL TRIAL.** Defendants shall designate any such gestures no later than three days prior to trial or waive any objection.

**LRMC's issues enumerated as 25 through 42.**

The Court's ruling as to the following portions of LRMC's motion *in limine* is the same:  25. Other pending litigation; 26. Fact witnesses not timely designated; 27. Expert opinions not timely furnished; 28. Deposition testimony without obtaining a ruling on any objections; 29. Exhibits without obtaining a ruling on any objections; 30. Damages beyond those incurred or legally recoverable; 31. Ability of defendants to satisfy a judgment; 32.

Alleged violations of protective orders; 33. Objections, instructions, or sidebars in depositions; 34. Objections to plaintiffs' discovery requests; 35. Correspondence between counsel; 36. Settlement discussions or documents generated as a result of them; 37. Questions eliciting privileged response or claim of privilege; 38. Seeking stipulations in jury's presence; 39. Inquiry in jury's presence of LRMC to produce documents or information; 40. Identifying source of submitted instructions or interrogatories; 41. Denial of LRMC's or grant of plaintiffs' motions; 42. This motion or rulings related to this motion, etc. Because there is no indication at this time that there will be testimony or reference to any of the above, **IT IS ORDERED** that the portions of the motion enumerated 25 through 42 are **DENIED WITHOUT PREJUDICE.**

New Orleans, Louisiana, March __6th__, 2006.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE