UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KADLEC MEDICAL CENTER *et al.*                    CIVIL ACTION

VERSUS                                             No. 04-0997

LAKEVIEW ANESTHESIA ASSOCIATES *et al.*           SECTION I/3

<u>**ORDER AND REASONS**</u>

Before the Court is a motion *in limine* filed on behalf of defendant, Lakeview Medical Center L.L.C., d/b/a Lakeview Regional Medical Center ("LRMC hospital" or "LRMC"), to strike or limit the testimony and reports of three experts of plaintiffs, Kadlec Medical Center and Western Professionals.[1] Related in part to LRMC hospital's motion are the pre-trial memoranda of the parties addressing the applicability of the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. §§ 11101-11152, and the Louisiana Diversion of Medication Regulation, La. Admin. Code tit. 46, part XLV, subchapter G, § 6557, to this action.[2]  For

---

[1] Rec. Doc. No. 203.

[2] Rec. Doc. Nos. 257 & 258, pre-trial memoranda of defendant, LRMC hospital.  Rec. Doc. No. 259, pre-trial memorandum of defendants, Lakeview Anesthesia Associates ("LAA"), Dr. Dennis, Dr. Preau, Dr. Baldone, and Dr. Parr (collectively, "LAA defendants").  Rec. Doc. No. 256, pre-trial memorandum of plaintiffs, Kadlec Medical Center and Western Professional Insurance Company.
    The pre-trial memoranda of the parties relate to this motion in that plaintiffs' experts rely on the HCQIA and the Louisiana diversion of medications regulation in forming some of their opinions.

the following reasons, defendant's motion is **GRANTED IN PART, DENIED IN PART, AND DEFERRED TO TRIAL IN PART.**

### *Background*

The facts of this case have previously been set forth.[3]  At issue in LRMC hospital's motion are the expert reports and testimony of three of plaintiffs' experts:  1) Peter J. Betts, a hospital administrator who expresses opinions regarding, *inter alia*, LRMC hospital's bylaws, policies, and procedures; 2) Dr. John H. Lecky, an anesthesiologist, who expresses opinions regarding identification, treatment and discipline of impaired anesthesiologists; and 3) Dr. Arthur M. Zoloth, a purported expert in the field of hospital pharmacy practice, who expresses opinions regarding the adequacy of Kadlec's policies and procedures for monitoring the use of controlled substances.

### *Law and Analysis*

**I.  Plaintiffs' Negligence Claim Based on the Federal Reporting Statute and the Louisiana Diversion of Medications Regulation**

Plaintiffs allege that defendants breached several duties under the rubric of general negligence.  In the pretrial order, plaintiffs specifically claim as contested issues of fact that LRMC hospital and/or the LAA defendants (Lakeview Anesthesia Associates, Dr. Dennis, Dr. Preau, Dr. Baldone, and Dr. Parr)

---

[3] *See* Rec. Doc. No. 157; *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, No. 04-997, 2005 WL 1309153 (E.D. La. May 19, 2005).

-2-

were negligent based on a number of various acts or failures.[4]
In their complaint, however, plaintiffs' negligence claim is much
more limited and has as its foundation two legal bases:  the
Health Care Quality Improvement Act ("HCQIA") and the Louisiana
diversion of medications regulation.[5]

Because plaintiffs' negligence claim is premised solely on
the aforementioned state and federal laws, the Court construes
many of the factual issues, designated as issues related to
defendants' negligence, to be subsumed by plaintiffs' negligent

---

[4] *See* Rec. Doc. No. 252.  Plaintiffs identify the following as issues with
respect to defendants' negligence:  (1) defendants knew or should have known that
Dr. Berry was diverting controlled substances and failed to exercise reasonable
care to investigate the known risk posed by Dr. Berry to ensure that others did
not suffer injury; (2) defendants did not implement a reasonable policy in order
to detect drug diversion; (3) defendants did not follow their own policies and
procedures for the identification and reporting of allegedly impaired physicians;
(4) defendants did not follow their own corrective action policy for physicians
who are allegedly impaired or who otherwise endanger patient safety; (5)
defendants did not properly maintain records of Dr. Berry's alleged drug usage
issues in order to allow LRMC hospital  personnel to respond properly to third-
party requests for credentialing information; (6) defendants did not properly
inform the necessary personnel about Dr. Berry's alleged drug-related problem;
(7) defendants did not employ sufficient competent personnel to respond to
credentialing requests from other health care providers and state licensing
authorities; (8) defendants did not report Dr. Berry's alleged impairment to the
Louisiana State Board of Medical Examiners; (9) defendants did not report Dr.
Berry's alleged impairment to the National Practitioners Data Bank; (10)
defendants did not refer Dr. Berry to the Physicians Health Foundation of
Louisiana for treatment and monitoring; (11) defendants did not conduct a
reasonable search of its own records before responding to requests for
credentialing information about Dr. Berry; (12) defendants did not contact
persons knowledgeable about Dr. Berry before responding to requests for
credentialing information about Dr. Berry; (13) defendants withheld information
from the LRMC Medical Executive Committee and Board of Trustees regarding the
true reasons for Dr. Berry's departure from LRMC and LAA.

[5] With respect to plaintiffs' negligence claim, as distinguished from their
negligent misrepresentation claim, to the extent this Court previously held that
a negligence cause of action should not be dismissed based on a duty to disclose,
the Court now seeks to clarify that its holding applied only to plaintiffs'
negligent misrepresentation claim.  *See* Rec. Doc. No. 157; *Kadlec Med. Ctr. v.
Lakeview Anesthesia Assocs.*, No. 04-997, 2005 WL 1309153 (E.D. La. May 19, 2005).
The duty to disclose is part and parcel of negligent misrepresentation by
omission.

-3-

misrepresentation claim.  For example, whether any defendant knew or should have known of Dr. Berry's drug diversion or whether any defendant otherwise failed to exercise reasonable care to ascertain the truth of Dr. Berry's condition are issues at the heart of plaintiffs' negligent misrepresentation claim.[6]  The essence of such a claim is whether any information conveyed was inaccurate or whether any information omitted was concealed knowingly or by a failure to exercise reasonable care. Similarly, whether defendants undertook any independent action to monitor Dr. Berry's documentation and usage of narcotics at LRMC hospital relates to defendants' knowledge vis-a-vis plaintiffs' misrepresentation claims.  Such alleged failures, on their own, have not been pleaded as a negligence cause of action for which defendants could be held liable.

As stated, plaintiffs maintain that the defendants' alleged violations of the HCQIA and Louisiana's diversion regulation provide a basis for their negligence cause of action.  Plaintiffs and their experts rely on the HCQIA and the Louisiana regulation as a basis for their negligence claim and for evidence of a

---

[6] One element of a negligent misrepresentation claim is that the defendant breached, by omission and/or affirmative misrepresentation, its duty to supply information by not exercising reasonable care in obtaining or communicating the information.  *See, e.g.*, *Daye v. General Motors Corp.*, 720 So. 2d 654 (La. 1998); *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007 (La. 1993).

-4-

standard of care.[7]  Defendants contest the applicability of these sources.

The parties agree that Louisiana courts have repudiated the common law concept of negligence per se, *i.e.*, that the violation of a statute automatically constitutes negligence.  *See Galloway v. State*, 654 So. 2d 1345, 1347 (La. 1995) ("The doctrine of negligence per se has been rejected in Louisiana."); *Phillips v. K-Mart Corp.*, 588 So. 2d 142, 143 (La. App. 3d Cir. 1991). Instead, pursuant to Louisiana law, negligence cases are resolved by employing the duty/risk analysis.  *Phillips*, 588 So. 2d at 144.

"The determination of liability under the duty/risk analysis usually requires proof of five separate elements:  (1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability

---

[7] Plaintiffs' experts also make reference to the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") guidelines.  JCAHO, the primary independent national organization for the accreditation of medical facilities, promulgates standards to which hospitals voluntarily subject themselves for JCAHO accreditation.  Plaintiffs themselves recognize that JCAHO guidelines do not provide a negligence cause of action.  Instead, they argue that such guidelines evidence a standard of care.  A standard of care is moot without an underlying negligence claim.

or scope of protection element); and (5) proof of actual damages
(the damages element)." *Perkins v. Entergy Corp.*, 782 So. 2d
606, 611 (La. 2001).  Statutes, however, may evidence a standard
of care.  *Gatlin v. Entergy Corp.*, 904 So. 2d 31, 35 (La. App.
4th Cir. 2005).  And statutory requirements may provide
guidelines for civil liability.  *Galloway*, 588 So. 2d at 1347.

A "threshold issue in any negligence action is whether the
defendant owed the plaintiff a duty." *Lazard v. Foti*, 859 So. 2d
656, 659 (La. 2003) (citing *Meany v. Meany*, 639 So. 2d 229, 233
(La. 1994)).  "Whether a duty is owed is a question of law." *Id.*
(citing *Peterson v. Gibraltar Sav. & Loan*, 733 So. 2d 1198, 1204
(La. 1999)).  The Louisiana Supreme Court has recognized that
"[t]he inquiry is whether the plaintiff has any law, statutory or
jurisprudential, to support his claim." *Id.* (citing *Roberts v.
Benoit*, 605 So. 2d 1032, 1043 (La. 1991)).

It is far from well-settled that a defendant-health care
entity owes a duty to a plaintiff-health care entity, or its
insurer, to report certain information to a federal or state
databank.  In support of such a duty, plaintiffs maintain that
the HCQIA and the Louisiana diversion regulation provide a basis
for their negligence cause of action.

In *Hill v. Lundin & Associates, Inc.*, the Louisiana Supreme
Court explained that when a plaintiff relies upon a statute for
imposing a duty, "the court attempts to interpret legislative

intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the Legislature."  256 So. 2d 620, 622 (La. 1972); *see Lazard v. Foti*, 859 So. 2d 656, 660-61 (La. 2003) (citing *Hill*, 256 So. 2d at 622).   In order to determine whether defendants' alleged violation was a breach of a delictual duty owed plaintiffs, it is necessary to examine the purposes of the legislation and decide (1) whether plaintiff falls within the class of persons it was intended to protect and (2) whether the harm complained of was of the kind which the statute was intended, in general, to prevent.  *See Clomon v. Monroe City School Bd.*, 572 So. 2d 571, 577 (La. 1990) (citing *Carter v. City Parish Government of East Baton Rouge*, 423 So. 2d 1080 (La. 1982); *Boyer v. Johnson*, 360 So. 2d 1164 (La. 1978); and PROSSER & KEETON, THE LAW OF TORTS § 36 at 225); *see also Weber v. Phoenix Assurance Co. of N.Y.*, 273 So. 2d 30, 33 (La. 1973); *Scott v. Pyle*, 770 So. 2d 492, 500 (La. App. 1st Cir. 2000).[8]

---

[8] The examination of whether the legal duty encompasses the risk is known as legal cause or the scope of the duty.  *Conerly v. State ex rel. the Louisiana State Penitentiary*, 858 So. 2d 636, 646 (La. App. 1st Cir. 2003).   The determination of legal cause is a purely legal question.  *Scott*, 770 So. 2d at 500.  As stated above, a plaintiff must establish that the defendant's violation of a law was a legal cause of the injury.  *See Rome v. State Farm Mut. Auto Ins.*, 439 So. 2d 1253, 1255 (La. App. 5th Cir. 1983).   "The legal causation test requires that there be a 'substantial relationship' between the conduct complained of and the harm incurred."  *Kovac v. Spraymax, Inc.*, 911 So. 2d 934, 936,(La. App. 2d Cir. 2005).  In an attempt to clarify the issue, the Louisiana Supreme Court has expounded that "[r]egardless if stated in terms of proximate cause, legal cause, or duty, *the scope of the duty inquiry* is ultimately a question of policy as to whether the particular risk falls within the scope of the duty."  *Roberts v. Benoit*, 605 So. 2d 1032, 1044 (La. 1991) (emphasis added).

### A. HCQIA

In analyzing the contentions of the parties with respect to a negligence cause of action, the Court considers whether defendants' duty to report extended to plaintiffs.  Explaining the HCQIA, the United States Court of Appeals for the Third Circuit has stated that:

> In 1986 Congress enacted the Health Care Quality Improvement Act.  As the name suggests, the purpose of the HCQIA was to improve the quality of medical care by restricting the ability of physicians who have been found to be incompetent from repeating malpractice by moving from state to state without discovery of such finding. 42 U.S.C. § 11101; H.R. Rep. No. 99-903 at 2, *reprinted in* 1986 U.S.C.C.A.N. 6384-6391.  The HCQIA established a national reporting system requiring that insurance companies report medical malpractice payments made; that boards of medical examiners report sanctions imposed against physicians; and that hospitals report adverse professional review information.  42 U.S.C. §§ 11131-33. To support that purpose and ensure that both hospitals and doctors engage in meaningful professional review, Congress provided immunity to those persons participating in professional review activities. See 42 U.S.C. § 11101(5), 11111(a); H.R. Rep. 99-903 at 2-3, *reprinted in* 1986 U.S.C.C.A.N. at 6385.

*Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005) (internal case citation omitted).  Recognizing the increasing occurrence of medical malpractice, the need to improve the quality of medical care and the national need to restrict the ability of incompetent physicians to move without disclosure or discovery of the physician's previous damaging or incompetent performance, Congress created a system for "effective professional peer review."  42 U.S.C. § 11101.

-8-

Much of the case law discussing the legislative history of the HCQIA relates to the peer review provisions.  However, those provisions are not directly pertinent to LRMC hospital's motion or this lawsuit.  *See, e.g., Hancock v. Blue Cross-Blue Shield of Kansas, Inc.*, 21 F.3d 373, 374-75 (10th Cir. 1994) (detailing the legislative history of the HCQIA's peer review provisions).  Rather, HCQIA's national reporting requirements are relevant to plaintiffs' negligence claim.

As plaintiffs and their experts suggest, the policies motivating HCQIA's reporting requirements relate to plaintiffs' allegations in this matter in that the misrepresentations (or omissions) in concert with defendants' failure to report to the national databank led to an impaired physician moving from one state to another.  In order to protect against such interstate travel of physicians, Congress implemented section 11133(a)(1).[9]

In order for plaintiffs to invoke the HCQIA either as a basis for their negligence cause of action or as some evidence of

---

[9] Pursuant to section 11133(a)(1) of the HCQIA, health care entities, like LRMC hospital and LAA, must report a physician to the Board of Medical Examiners when the hospital undertakes a professional review action that adversely affects the clinical privileges of a physician for a period of longer than 30 days, § 11133(a)(1)(A), or when a physician resigns or surrenders clinical privileges while "under investigation" or in return for not conducting such an investigation.  § 11133(a)(1)(B)(i)-(ii).
   The term "health care entity" means:
   (i) a hospital that is licensed to provide health care services by the State in which it is located,
   (ii) an entity (including a health maintenance organization or group medical practice) that follows a formal peer review process for the purpose of furthering quality health care (as determined under regulations of the Secretary).
   42 U.S.C. § 11151(4)(A).

negligence, the HCQIA must have been enacted to protect persons in plaintiffs' position or to prevent plaintiffs' damages.[10]  *See Clomon*, 572 So. 2d at 577.  Plaintiffs do not provide any authority or legislative history for their claim that hospitals or their insurers were intended to be protected by the HCQIA, nor do they rely on any Louisiana case law or persuasive authority from another jurisdiction to advance their position that defendants' alleged violation of the HCQIA supports a negligence cause of action.  Rather, plaintiffs broadly maintain that but for defendants' violations of the HCQIA they would not have been injured, and that "there is no doubt that a failure to report an incompetent and unfit doctor . . . could be reasonably anticipated to result in the granting of practice privileges to that doctor by another hospital . . . ."[11]

    This Court is not convinced that plaintiffs' but-for analysis demonstrates, as required by Louisiana law to sustain a statutorily based negligence claim, that the HCQIA was enacted to protect plaintiffs or to prevent damages of the sort incurred. Notwithstanding the fact that the HCQIA was, among other things,

---

    [10] Plaintiffs' misrepresentation claims are not motivated by the HCQIA because the harm caused by defendants' misrepresentations is necessarily caused by defendants' failures to communicate *to plaintiff* Kadlec Medical Center, not failures to report to the National Practitioner's Databank.

    [11] *See* Rec. Doc. No. 256, p. 5 ("Since the defendants' violations of the HCQIA and the Louisiana regulation are both the cause in fact and legal cause of Kadlec's injuries, these laws proved [sic] an actionable bases and an [sic] reference for the standard of care under the plaintiffs' negligence claims.")

intended to prevent incompetent physicians from moving from state to state without disclosure or discovery of their past incompetence, the Court finds no support, in the legislative history or in case law, for plaintiffs' position that the HCQIA was designed to protect hospitals and their insurers from economic damages suffered as a result of another health care entity's purported failure to comport with the requirements of the HCQIA.[12]  Based on the dearth of support for plaintiffs' claim of negligence based on the HCQIA, the Court finds that the statute does not provide a basis for a cause of action under Louisiana law in this case.

## B. Louisiana's Diversion of Medications Regulation

Title 46 of the Louisiana Administrative Code contains a diversion of medications regulation.  Specifically, section 6557 provides:

> A registrant shall immediately report to the board, in writing, any known or reasonably suspected instance of diversion of medications to unauthorized use or possession by any patient or any other person.

La. Admin. Code, tit. 46, part XLV, subpart 3, chapter 65,

---

[12]  In *Brown v. Medical College of Ohio*, 79 F. Supp. 2d 840 (N.D. Ohio 1999), the court noted that the HCQIA "was passed to protect *patients* by improving the quality of health care and reducing the number of incompetent physicians, and, in addition, to benefit peer committees by providing immunity from suit so long as they abide by its procedures."  79 F. Supp. 2d at 845 (emphasis in original).

subchapter G, § 6557.[13]  According to the Administrative Code,
section 6557 was promulgated in accordance with La. R.S. §§
37:1261-1292 and R.S. § 37:1204.  Section 37:1261 contains a
declaration of purpose, which states:

> Recognizing that the practice of medicine, surgery, and
> midwifery is a privilege granted by legislative authority
> and is not a natural right of individuals, the state of
> Louisiana deems it necessary as a matter of policy in the
> interests of public health, safety, and welfare to
> provide laws and provisions covering the granting of that
> privilege and its subsequent use, control, and regulation
> to the end that the public shall be properly protected
> against unprofessional, improper, unauthorized, and
> unqualified practice of medicine and from unprofessional
> conduct of persons licensed to practice medicine,
> surgery, and midwifery.

La. R.S. § 37:1261 (West 2006).  Other than this acknowledgment
that the *public* should be protected, the Court has been unable to
locate, and the parties have not directed it to, any legislative
history which would lend credence to plaintiffs' contention that
section 6557 provides the basis for a negligence claim against
the defendants in this action.

With respect to LRMC hospital, title 46 of the Louisiana
Administrative Code defines a "registrant" as "a physician who is
registered with the board as a dispensing physician in accordance
with Subchapter C of this Chapter."  *Id.* at § 6503.  The
diversion regulation only applies to physicians, and not to LRMC

---

[13]  La. Admin. Code available at http://www.state.la.us/osr (follow
"Louisiana Administrative Code" hyperlink; then follow "Publications Online"
hyperlink); Title 46, part XLV, subpart 3, chapter 65, subchapter G of La. Admin.
Code available at http://www.state.la.us/osr/lac/46v45/46v45.pdf (last visited
May 8, 2006), at p. 142.

hospital.[14]

However, as the regulation relates to the physician defendants, the Court finds that the regulation's general protections do not provide a basis for plaintiffs' negligence claim.  Much like the HCQIA, the regulation exists to specifically protect patients and to generally protect the public.  Without some evidence that the regulation was intended to benefit and/or protect hospitals and their insurers, like plaintiffs, this Court concludes that the Louisiana diversion of medicine regulation, La. Admin. Code, tit. 46. part XLV, subpart 3, chapter 65, subchapter G, § 6557, does not support plaintiffs' negligence cause of action in this case.

## II. Plaintiffs' Experts

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469 (1993).  Rule 702 states:

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to
> understand the evidence or to determine a fact
> in issue, a witness qualified as an expert by

---

[14] Plaintiffs put forth an argument that this regulation applies to LRMC hospital through Dr. Dennis.  However, plaintiffs have not provided support for the establishment of a duty which would be owed by a hospital through an agent pursuant to the diversion of medicine regulation.  Nor does the Court find such an argument persuasive.  Section 6557, as well as the remainder of subpart 3 of Title 46, pertains exclusively to the practice of medicine, surgery and midwifery.  By definition, the "practice of medicine" cannot be conducted by a health care entity such as a hospital, and no provision or definition within the relevant sections of the Louisiana Administrative Code suggests that hospitals may be subject to it by virtue of an agency relationship with a physician.

-13-

> knowledge, skill, experience, training, or
> education, may testify thereto.

"In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., the
Supreme Court interpreted Rule 702 as requiring the trial judge
to ensure that an expert's testimony is both reliable and
relevant to the case at hand." *Short v. Anangel Spirit Compania
Naviera*, No. 01-1400, 2002 WL 31554009, *1 (E.D. La. Nov. 15,
2002)(citing *Daubert,* 509 U.S. at 589, 113 S. Ct. at 2795).
*Daubert's* gatekeeping obligation applies not only to "scientific"
testimony, but to all expert testimony.  *See Kumho Tire Company,
Ltd. v. Carmichael,* 526 U.S. 137, 148, 119 S. Ct. 1167, 1174, 143
L. Ed. 2d 238 (1999); *Watkins v. Telsmith, Inc*., 121 F.3d 984,
988-91 (5th Cir. 1997).

With respect to the Daubert relevancy prong, Rule 702
requires that the proposed expert testimony be relevant, "not
simply in the way all testimony must be relevant, Fed. R. Evid.
402, but also in the sense that the proposed expert's opinion
would assist the trier of fact to understand or determine a fact
in issue." *Bocanegra v. Vicmar Servs. Inc*., 320 F.3d 581, 584
(citing *Daubert*, 509 U.S. 579, 113 S. Ct. 2786).

The *Daubert* case also identified a number of non-exclusive
factors which may be relevant to the reliability inquiry:  (1)
whether the technique has been tested; (2) whether the technique
has been subjected to peer review and publication; (3) the
technique's error rate; (4) the existence and maintenance of

standards controlling the technique's operation; and (5) whether the technique has been accepted in the scientific community. *See Daubert*, 509 U.S. at 593-94, 113 S. Ct. 2786, 2796-98.  In *Kumho Tire*, the Court recognized that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150, 119 S. Ct. at 1175.  In fact, where scientific knowledge is not at issue, the court need not employ the *Daubert* factors to determine reliability, but may gauge reliability from a more flexible analysis. *Kumho Tire*, 526 U.S. at 149, 119 S. Ct. 1167.

The Fifth Circuit has recognized that "[b]oth the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (citing *Kumho Tire*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).  Moreover, "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citing *Kumho Tire*, 526 U.S. at 151, 119 S. Ct. 1167).

**A. Peter Betts**

Plaintiffs designate Peter Betts as an expert in the field

of hospital administration.  Plaintiffs suggest that Betts will assist the trier of fact in identifying and understanding LRMC hospital policies, procedures and bylaws applicable to the situation presented by Dr. Berry's impairment.  Betts has a masters in health administration and is a Fellow of the American College of Healthcare Executives ("FACHE"), the highest level of board certification offered by that body.  Betts also served as the president and CEO of East Jefferson General Hospital, a 525-bed facility in Metairie, Louisiana, for twenty years.  LRMC hospital does not contend that Betts is unqualified as an expert in the area of hospital administration.

LRMC hospital moves to preclude any evidence and argument pertaining to its alleged breach of its own internal policies, procedures and bylaws.  Specifically, LRMC suggests that its bylaws, procedures and internal policies are irrelevant because under Louisiana law a third party has no right or cause of action based on the policies of a company.  *See Randall v. Chalmette Med. Ctr., Inc.*, 819 So. 2d 1129, 1134 (La. App. 4th Cir. 2002). LRMC hospital also contends that Betts is not qualified as an expert in law or ethics.  It specifically objects to the legal opinions contained in Betts's expert report and raises two grounds for excluding such testimony:  1) Betts's legal opinions improperly invade the province of the Court and 2) Betts is not qualified as a legal expert.  Finally, LRMC hospital contends

that Betts's opinions are irrelevant and that his speculative
and/or conclusory opinions should be excluded.

Plaintiffs contend that the defendant hospital's policies
and bylaws are relevant because they provide evidence of a
standard of care for determining LRMC hospital's duty under
Louisiana negligence law.  Plaintiffs also assert that Betts's
so-called legal opinions are related to how defendants failed to
comport with a standard of care.

Relevant testimony is "evidence having any tendency to make
the existence of any fact that is of consequence to the
determination of the action more or less probable that it would
be without the evidence."  Fed. R. Evid. 401.  As LRMC hospital
correctly notes, plaintiffs have no cause of action against it
based on its policies and bylaws.  Moreover, this Court has
determined that Louisiana law does not support plaintiffs'
negligence claim based on the HCQIA or the Louisiana diversion of
medications regulation.  Therefore, the standard of care that
LRMC hospital's internal policies and bylaws may provide has no
relevance to plaintiffs' lawsuit without their negligence claim.

If Betts's testimony does address issues related to
plaintiffs' negligent or intentional misrepresentation claims,
plaintiffs have not sufficiently identified how his testimony
would assist the jury.  Accordingly, the Court **DEFERS** until
trial defendant's motion to strike Betts's testimony.  However,

-17-

as his testimony relates to plaintiffs' negligence claim, the Court agrees with defendant that Betts's expert report and testimony should be stricken.

With respect to LRMC hospital's objection to Betts's opinions regarding any billing errors and audits, the Court finds that Betts's opinions are irrelevant and would not assist the trier of fact.[15]  Plaintiffs maintain that Betts's opinions are relevant because they reflect steps that LRMC hospital could have taken to confirm Dr. Berry's impairment, that LRMC had a duty not to submit fraudulent claims for payment, and that "LRMC's refusal to conduct a thorough audit is [] evidence of its efforts to bury the truth about Dr. Berry's addiction."[16]  The Court is not persuaded that plaintiffs' stated purposes for Betts's testimony are relevant to a misrepresentation claim.  Moreover, any relevance that such matters may have to this action is substantially outweighed by the potential of confusion of the issues.

**B. Dr. Lecky**

Dr. John H. Lecky is a board certified anesthesiologist, a professor of anesthesia at the University of Washington, as well as a recovering substance abuser.  Plaintiffs offer Lecky as an

---

[15] Betts's opinions related to billing errors and audits are located at ¶¶ 3.1.1, 3.1.4.1, 4.3, 4.3.5, 4.3.6.

[16] Rec. Doc. No. 208.

expert in the area of identification, treatment and discipline of impaired anesthesiologists.

LRMC contends that Lecky is not qualified to offer opinions with respect to ethical norms in the medical profession and that such opinions and related testimony are irrelevant.  LRMC also objects to specific statements in Lecky's expert report which it maintains are improper for a number of reasons.  Finally, it contends that Lecky's expert report is riddled with inadmissible legal conclusions.[17]

### 1. Legal Conclusions

The legal conclusions LRMC hospital objects to are based on the HCQIA and the Louisiana diversion of medications regulations.[18]  For the reasons stated above, the Court has concluded these laws are not applicable to this action and, therefore, Dr. Lecky's opinions and conclusions regarding these laws are irrelevant.[19]

---

[17] Rec. Doc. No. 203, p.13.

[18] In his expert report, Lecky opines that "[w]hen Dr. Dennis and Mr. Lauderdale learned of Dr. Berry's highly abnormal drug usage and his incomplete and inaccurate documentation of narcotic administration, they were obligated by state law to report him to the Louisiana Physician's Health Program or the State Medical Board," and that "LAA and LRMC were required to report concerns about Dr. Berry's impairment in order to be in compliance with the Health Care Quality Improvement Act and with Louisiana State Regulations." Rec. Doc. No. 203, exhibit 2, App-24, App-26.

[19] In addition to the fact that the Court has concluded these laws are irrelevant, Lecky has no experience or expertise with respect to federal or Louisiana law and he is not qualified to offer this testimony.  Accordingly, Lecky will not be permitted to testify with respect to any parties' legal obligations under federal or state law.

-19-

Lecky's report also contains indisputably inappropriate conclusions. He opines, "It is my expert opinion that the members of the Lakeview Anesthesia Associates and the Lakeview Regional Medical Center were grossly negligent and derelict in their duties."[20] Plaintiffs concede that Lecky's ultimate conclusion of "gross negligence" is improper. However, they argue that Lecky's remaining conclusions that, "[defendants'] actions represent a dramatic deviation from any reasonable standard of management or care," and that, "[u]ltimately, their negligent actions contributed to the unnecessary and irreversible brain damage suffered by Dr. Berry's patient, Kim Jones," are admissible.[21]

The Court concludes that those portions of Lecky's report and opinions related to a negligence cause of action and state or federal reporting laws are not relevant and, therefore, will not assist the jury. However, the Court agrees with plaintiffs that Lecky is qualified to offer an opinion related to the identification of substance abuse and the management of anesthesiologists to the extent it relates to plaintiffs' misrepresentation claims. Accordingly, LRMC's motion with respect to Dr. Lecky's opinions regarding defendants' negligence is **GRANTED IN PART** and **DENIED IN PART.**

---

[20] Rec. Doc. No. 203, exhibit 2, App-27.

[21] See Rec. Doc. No. 203, exhibit 2, App-27.

## 2. Factual Inaccuracies

LRMC hospital also asserts that Lecky's report is inadmissible because his opinions are based on incorrect facts. To whatever extent Lecky's expert report relies upon incorrect facts or confuses the acts of the defendants, LRMC hospital is entitled to cross examine Lecky, but his testimony is not inadmissible because his report may reflect confusion regarding the facts.  Accordingly, that portion of LRMC hospital's motion is **DENIED.**

## 3.  Purported Moral and Ethical Opinions

LRMC argues that Lecky's moral and ethical opinions are inadmissible because he is not an expert in those fields.[22] Plaintiffs counter that Lecky is qualified by his background, experience and knowledge to offer an opinion regarding the ethical norms that govern medical professionals.  Plaintiffs further argue that Lecky's experience has involved work with impaired physicians and specifically includes training hospital personnel and physicians with respect to impaired anesthesiologists.

Notwithstanding his qualifications, the Court finds that Lecky's opinions regarding ethical and moral norms will not

---

[22] Dr. Lecky opines that "[m]oral and ethical considerations (safety of patients and safety of physicians) mandate that reasonable concern should initiate immediate contact with a professional trained in the evaluation and treatment of addictive disease.  LAA and LRMC were required to report concerns about Dr. Berry's impairment in order to be in compliance with the [HCQIA] and with the Louisiana State Regulations."  Rec. Doc. No. 203, exhibit 2, App-26.

assist the trier of fact.  Furthermore, the moral and ethical
considerations identified by him relate solely to defendants'
purported duty to report pursuant to the HCQIA and the Louisiana
regulation.  Because the Court has found that these laws do not
support a negligence cause of action, Lecky may not testify to
the related moral and/or ethical considerations.  Accordingly,
this portion of defendant's motion is **GRANTED.**

### 4. Specific Statements

Lastly, LRMC objects to three specific statements in Lecky's
report:  (1) that "there could be no question" about Dr. Berry's
addiction" to narcotics while practicing medicine at LRMC
hospital, (2) that Dr. Berry "realized that he must hide his drug
misappropriation all the more carefully," and (3) that it was
"inappropriate for Mr. Lauderdale and Dr. Dennis to assume the
management of Dr. Berry."[23]  LRMC hospital has not objected to
Lecky as an expert anesthesiologist with experience in the
identification, treatment and discipline of impaired
anesthesiologist.  LRMC hospital objects to these statements
because they are unreliable, speculative, and wholly conclusory.

Citing *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000), LRMC
hospital contends that Fifth Circuit law requires the exclusion
of testimony if it does not adequately account for alternative
explanations.  In *Munoz*, the Fifth Circuit found that the

---

[23] Rec. Doc. No. 203, exhibit 2, App-25, App-26, App-24.

district court had not abused its discretion in excluding a scientific expert's testimony based on unreliability.  200 F.3d at 301-02.  The *Munoz* court did not hold that expert testimony is *per se* inadmissible if the expert fails to consider alternative explanations.  *Id.*  Rather, the Fifth Circuit reaffirmed the role of the district court as gatekeeper of expert testimony.  *Id.* at 302.

The three statements in Dr. Lecky's report to which LRMC objects relate to the reporting laws that this Court has found inapplicable.  To the extent that Dr. Lecky's three statements relate to defendants' duty to report, the Court will exclude Dr. Lecky's testimony.  If, however, Dr. Lecky's opinions relate to plaintiffs' misrepresentation claims, the Court notes that Lecky's expert report is not in evidence and LRMC hospital will be entitled to cross examine the witness with respect to his conclusions.  Accordingly, the Court **DEFERS** until trial its ruling on LRMC's motion seeking to exclude Lecky's allegedly speculative and/or conclusory opinions as they relate to a misrepresentation claim.

### C. Dr. Zoloth

Dr. Zoloth served for eight years as the chairman of the Washington State Board of Pharmacy.  He also served on the American Society of Hospital Pharmacists, Council of Legal and Public Affairs.  He has experience in the development and

implementation of pharmacy policies, and plaintiffs offer him as an expert to testify regarding the adequacy of Kadlec's pharmacy control and drug distribution policies and procedures.

LRMC hospital argues that Zoloth's expert report consists entirely of inadmissible conclusory statements and legal opinions.  LRMC hospital suggests that Zoloth's testimony is unreliable, that his legal opinions encroach on the province of the Court, and that he is not qualified to offer such opinions.

First, LRMC hospital contends that Zoloth's opinions as to Kadlec's pharmaceutical drug control policies are unreliable and, therefore, inadmissible under Rule 702.  LRMC challenges the reliability of Zoloth's testimony because he "does not provide a single principle or method to explain how he reached []his conclusion."[24]  LRMC hospital argues that his "wholly conclusory opinion lacks any principles, analysis, or methodology that this Court can evaluate for reliability."[25]  Defendant argues that if an expert's principles and methods are unknown and the Court

_____

[24] Rec. Doc. No. 103.

[25] Rec. Doc. No. 103.  LRMC appears to challenge four specific statements in Dr. Zoloth's expert report.  Zoloth states that:  1) Kadlec's policies and procedures "adequately addressed the distribution, monitoring, and documentation of controlled substances," *id.*, exhibit 3, App-53; 2) Kadlec "met and exceeded community/national standards" in drug monitoring, *id.*, App-54; 3) "The combination of Pyxis, Pandora and tackle box proof-of-use sheets during October 2002 through November 2002 were effective tools to assist hospital personnel responsible for the identification of suspected controlled substances diversion," *id.*; 4) Kadlec "did in a timely manner identify Dr. Berry's suspected controlled substances diversion." *id.*, App-55; and 5) the "action taken by the hospital staff after identifying possible diversion by Dr. Berry was timely, appropriate, and reasonable."  *Id.*

cannot determine if the testimony is reliable under *Daubert* and *Kumho Tire*, then the Court should refuse to admit the testimony. However, as noted above, the factors identified in *Daubert* may or may not be pertinent in addressing reliability.  *See Kumho Tire*, 526 U.S. at 150, 119 S. Ct. at 1175.

Plaintiffs contend that Zoloth's opinions are based on his practical experience and training as a pharmacist who has been responsible for the development and implementation of pharmacy control policies and hospital drug distribution systems. Plaintiffs also note that a failure to satisfy the *Daubert* factors concerning methodology and principles does not preclude Zoloth's testimony as the reliability prong can be satisfied by Zoloth's experience and training in his area of expertise.  *See United States v. Jones*, 107 F.3d 1147, 1160-61 (6th Cir. 1997)(recognizing that experience may be basis for reliability of expert testimony).

While Zoloth has over twenty five years of health care management experience related to pharmaceutical services and his report identifies the policies and procedures in place at Kadlec at the time pertinent to this case, the Court finds that Zoloth's report and testimony does not satisfy the reliability prong of *Daubert* and its progeny.  Zoloth does not adequately identify and analyze Kadlec's policies and procedures or explain how his training, education and/or experience qualifies him to conclude

-25-

that Kadlec's actions were satisfactory.  Accordingly, the Court **GRANTS** LRMC's motion to strike the expert report and testimony of Dr. Zoloth.

### *Conclusion*

For the above and foregoing reasons, **IT IS ORDERED** that the motion *in limine* to strike or limit plaintiffs' expert testimony or reports filed on behalf of defendant, Lakeview Medical Center L.L.C., d/b/a Lakeview Regional Medical Center, is **GRANTED IN PART, DENIED IN PART, AND DEFERRED TO TRIAL IN PART** as set forth in this Order and Reasons.

New Orleans, Louisiana, May __9th__, 2006.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

-26-